UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| K.H., A MINOR, AND S.H., A MINOR, BY VIRGINIA JOHNSON, GUARDIAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMLARLY SITUATED,<br><br>PLAINTIFFS,<br><br>v.<br><br>KEYSTONE RURAL HEALTH CENTER, D/B/A/ KEYSTONE HEALTH,<br><br>DEFENDANT. | Case No.:<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 26 U.S.C. §§ 1332, 1441, 1446, and 1453**<br><br>[Franklin County Court of Common Pleas Case No. 2022-3277] |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Keystone Rural Health Center removes Case Number 2022-3277, filed in the Franklin County Court of Common Pleas, to the United States District Court for the Middle District of Pennsylvania.

## PROCEDURAL ACTION

1. On or about October 24, 2022, Plaintiffs K.H., a minor, and S.H., a minor, by Virginia Johnson ("Plaintiffs") filed a Class Action Complaint against Defendant Keystone Rural Health Center ("Keystone") in the Court of Common Pleas of Franklin County, Pennsylvania, Case No. 2022-3277 (the "state court action"). A

true and accurate copy of the complaint in the state court action is attached hereto as **Exhibit A**.

2. On October 27, 2022, Plaintiff served Keystone with copies of the summons and complaint. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(1), which states that the notice of removal "shall be filed within 30 days after the receipt by the defendant" of a copy of the initial pleading. True and accurate copies of the proof of service are attached hereto as **Exhibit B**.

3. Plaintiffs' complaint asserts causes of action for negligence, negligence per se, breach of fiduciary duty, breach of implied contract, unjust enrichment, and violations of the Pennsylvania's consumer protection law. Complaint, ¶¶ 51-97. No other pleadings or orders have been filed.

## VENUE AND JURISDICTION

4. This Court has removal jurisdiction and is the proper venue because it is the judicial district and division embracing the Franklin County Court of Common Pleas, the place where the state court action is pending. 28 U.S.C. § 1441(a), 1446(a), 1453(b).

5. Diversity jurisdiction is proper because the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d), extended the original jurisdiction of federal courts to class actions of 100 members or more, provided there is minimal diversity and the aggregate sum of each individual class member's claims

exceeds $5 million, exclusive of interests and costs. *See Judon v. Travelers Property Casualty Co. of America*, 773 F.3d 495, 500 (3d Cir. 2014). Removal is proper once all criteria are met and the Court need not wait for a class to be certified before asserting its federal jurisdiction over the action. 28 U.S.C. § 1332(d)(8).

6. There is no dispute that the potential class, as defined by Plaintiff, contains more than 100 members. Plaintiff purports to bring these causes of action "on behalf of themselves and all United States residents whose PII/PHI was exposed" (the "Class"). Complaint at ¶ 5. Plaintiff further alleges that the breach exposed the PII/PHI of 235,237 individuals. Complaint at ¶ 19. Defendants mailed notifications to 240,137 persons (the "notified population"). Therefore, the Class plaintiff seeks to represent exceeds the statutorily required minimum of 100.

7. Geographic minimal diversity for CAFA purposes arises when any member of a class of plaintiffs, not just the class representative, is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(1)(D) (defining class members as all "persons (named or unnamed) who fall within the definition" of the proposed class); 28 U.S.C. § 1332(d)(2)(A).

8. For purposes of CAFA, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For Keystone, both those places are Pennsylvania. Thus, Defendant Keystone is a citizen of

Pennsylvania, and diversity jurisdiction under CAFA is met if at least one named or unnamed class member is a citizen of any state outside Pennsylvania.

9. Plaintiffs seek to represent a class of all 235,237 "United States residents whose PII/PHI was exposed as a result of the Data Breach." Complaint, ¶¶ 19, 42. Defendant agrees with Plaintiffs that potential class members reside across the United States. Keystone identified impacted persons in all 50 states and sent notices of the security incident to addresses in every state plus the District of Columbia and Puerto Rico.

10. Defendant further acknowledges that "[t]he terms 'resident' and 'citizen' are not interchangeable for diversity purposes and have distinct definitions under the law." *Tucker v. Walmart Stores E., L.P.*, No. 3:18-CV-02284, 2019 WL 2324571, at *3 (M.D. Pa. May 31, 2019). But in this case, where only one member of the notified population must reside and intend to remain in a state outside Pennsylvania, it is improbable that none of the affected persons across the United States has voted, bought a house, paid his taxes, or run a business in a state other than Pennsylvania. *See McCann v. George W. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) ("Citizenship is synonymous with domicile . . . [i]n determining an individual's domicile, a court considers several factors, including declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business.") (internal citations omitted). Because at least one of the approximately

240,000 notified persons is most certainly domiciled in a state other than Pennsylvania, minimal diversity exists.

11. Furthermore, neither the "local controversy exception" nor the "home state controversy" exception work to deny subject matter jurisdiction here. *See King v. Mueller*, No. CIV.A. 3:14-1641, 2015 WL 1345174, at *1 (M.D. Pa. Mar. 25, 2015). Invoking the local controversy exception requires Plaintiffs to prove, among other things, that "no other class action asserting the same or similar allegations against any of the defendants" had been filed in the preceding three years. 28 U.S.C. § 1332(d)(4)(A).

12. While CAFA does not define what constitutes an "other class action," the Third Circuit looked to Congressional intent when holding that "[t]he inquiry is whether similar factual allegations have been made against the defendant in multiple class actions." *Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 509 (3d Cir. 2013). In other words, federal courts should decline jurisdiction under CAFA only in truly local controversies, not in "copycat situation(s) where the defendants face similar class claims brought by different named plaintiffs and different counsel in different forums." *Id*. at 509; fn. 11. That is precisely the situation here.

13. Specifically, on October 19, 2022, plaintiffs Kylie Breneman and Brandy Arroyo-Ryan filed a class action in this Court against Keystone Rural Health Center alleging that Keystone failed to protect class member's personal information from

unauthorized access and disclosure. *Breneman et al v. Keystone Health,* No. 1:22-cv-01643-CCC, (M.D. Pa.) ("Breneman Class Action"), attached as **Exhibit C**. Based on these similar allegations, plaintiffs asserted similar claims for negligence, negligence per se, breach of fiduciary duty, unjust enrichment, and breach of implied contract. There can be no dispute that the Breneman Class Action was filed within three years of this case, involves the same factual allegations as those at issue in this case, and is against the same defendants, rendering the local controversy exception inapplicable.

14. Moreover, "when a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that the local controversy exception is intended to address." (Citations omitted). *Vodenichar* at 508. Since the filing of the Breneman Class Action, no less than five other class action complaints have been filed between this Court and the Franklin County Court of Common Pleas.[1] This is not a uniquely local controversy, but a copycat situation

---

[1] In addition to the Breneman Class Action and the state court action at issue for removal here, the following cases based on the same factual allegations have been filed: *Whitehead et al v. Keystone Health,* Case No. 1:22-cv-01678-CCC (M.D. Pa.); *Alexandra Brake, Individually and on behalf of her son, T.B., v. Keystone Rural Health Center,* Case No. 1:22-cv-01784; *John Hagle et al v. Keystone Rural Health Center,* Franklin County Court of Common Pleas Case No. 2022-3491; and *Kathleen Hoos v. Keystone Rural Health Center,* Case No. 1:22-cv-1817 (M.D. Pa.).

where Defendant faces similar class claims brought by different named plaintiffs and different counsel in different forums. *Id.* at 509.

15. The second exception to subject matter jurisdiction, the "home state exception," would require the party seeking to invoke this exception to first establish that the citizenship of the members of two-thirds or more of the identified persons is Pennsylvania. *Id.* at 503. Plaintiff could never make such a demonstration without speaking directly to every person notified at a Pennsylvania address to ascertain whether it was "his true, fixed and permanent home and place of habitation" and "the place to which, whenever he is absent, he has the intention of returning." *Corrrado v. Timber Ridge Health Care Ctr.*, No. 3:17-CV-123, 2017 WL 2288858, at *3 (M.D. Pa. May 25, 2017).

16. That is especially true here given Defendant's history, i.e. formerly known as the Keystone Migrant Health Center, and mission which includes providing services to a population of temporary migrant agricultural workers. In fact, Defendant is the sole grantee in Pennsylvania providing services to temporary migrant agricultural workers across the state who very likely lack the intent to remain in Pennsylvania.[2] By definition of the Pennsylvania Department of Agriculture, Defendant is providing services under this grant only to individuals employed on a seasonal or

---

[2] https://keystonehealth.org/keystoneagworkerprogram/.

7

other temporary basis.[3] In addition, there are 22 colleges within 50 miles of the Defendant's primary health care locations in Chambersburg, Pennsylvania.[4]

17. For example, multiple persons were notified at the following locations: the harvest worker camp locations possibly associated with Bonnie Brae Fruit Farms, the address for Vallorani Mushrooms, the South Mountain Restoration Center (a residential facility assisting individuals in recovery with the stated goal of helping "residents return to their home in their community"), the mailing address for Penn State Mont Alto and Mercersburg Academy and the address of a student apartment complex near Shippensburg.  Given the specific population of the persons served by Defendant, it is more likely than not that less than two-thirds of the persons consider a Pennsylvania address "his true, fixed and permanent home and place of habitation."

18. Lastly, for this Court to invoke its jurisdiction under CAFA, the amount in controversy must exceed the sum or value of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2). CAFA directs courts to aggregate the claims of all class members when determining whether this jurisdictional threshold is met. 28 U.S.C. § 1332(d)(6).

---

[3] https://www.agriculture.pa.gov/Business_Industry/Farm%20Labor%20Camp%20Housing/pages/default.aspx.
[4] https://www.collegesimply.com/colleges-near/pennsylvania/chambersburg/.

19. The plaintiff is master of its complaint and, "[i]n removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 398-399 (3d Cir. 2004). Where, as here, the complaint lacks a specified amount of monetary relief, the defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). This burden is easily met by looking to the last cause of action in Plaintiffs' complaint because the statute at issue defines the universe of available remedies.

20. Count 6 of Plaintiffs' complaint alleges that Keystone engaged in unfair or deceptive acts in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). For this alleged violation, Plaintiffs seek actual damages, $100, or three times their actual damages, whichever is greatest, plus costs and reasonable attorney fees. As the Western District of Pennsylvania recently pointed out, any class action asserting violations of the UTPCPL with more than 16,667 members exceeds the $5 million jurisdictional threshold. *See Fox v. Chipotle Mexican Grill, Inc.*, No. 2:20-CV-1448, 2021 WL 706757, at *6 (W.D. Pa. Feb. 23, 2021) ("As a result, the minimum $5,000,000 amount in controversy can be reached by 16,667 alleged violations of the UTPCPL, if the Court trebles $100 minimum statutory damages to $300.").

21. Just like the plaintiffs in *Chipotle*, Plaintiffs seek damages in Count 6 of their complaint under 73 Pa. Cons. Stat. § 201-9.2(a). And just like the *Chipotle* plaintiffs, Plaintiffs here seek the greater of actual damages, $100, or trebled damages. The difference is that Plaintiffs' proposed class far exceeds 16,667 members. Invoking this Court's federal jurisdiction for the allegations in Count 6 is even more proper here than in *Chipotle* because this calculation does not rest on the specter of treble damages.

22. Where the amount per claim is apparent from the face of the complaint, "the number of class members will determine the amount in controversy through the operation of simple multiplication." *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 486 (W.D. Pa. 2009). The UTPCPL violation asserted by Plaintiffs against Defendants carries a statutorily mandated award of at least $100. 73 P.S. § 201-9.2(a) ("The court may, in its discretion, award up to three times the actual damages sustained, *but not less than one hundred dollars.*" (Emphasis added)). Based on the Plaintiff's purported class of 235,237 members, even the nominal award of $100 per violation of the UTPCPL would amount to damages of $23,523,700—before the addition of reasonable costs, attorney fees, or treble damages. Simple math compels the legal certainty that the amount in controversy for Count 6 alone far exceeds $5 million on the face of the complaint.

23. While the other causes of action contain no allegations supporting or suggesting the amount of actual damages to which identified persons would be entitled for those claims, one option for assigning a value to these damages is through the cost of credit monitoring. The cost of credit monitoring is the "out-of-pocket expenses" associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or authorized use of their PII and PHI that Plaintiff alleges she and the Class are at risk of in the future.

24. The three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.99 to $19.95 per person per month. Multiplying just the cost of providing two months of credit-monitoring services at $14.99 (the cheapest of the three products) by the number of Plaintiff's proposed class members, the amount in controversy for credit monitoring is approximately $7,052,405.26 (calculated as: 235,237 individuals notified, times 2 months, times $14.99 per month).

25. Accordingly, the three criteria for federal jurisdiction are satisfied. The notified population exceeds 100 members, it includes people across the United States while Keystone is a citizen of Pennsylvania, creating minimal geographic diversity, and the amount in controversy exceeds $5 million. No exception exists and removal to federal court is proper.

26. Pursuant to 28 U.S.C. § 1446(d), Defendant is providing written notice of removal to Plaintiffs and will file a copy of this Notice of Removal in the Franklin County Court of Common Pleas. A copy of the Notice of Filing of Notice of Removal is attached hereto as **Exhibit D**. Pursuant to Federal Rule of Procedure 7.1, Keystone's corporate disclosure statement is attached as **Exhibit E**.

27. For the foregoing reasons, Defendant Keystone Rural Health Center respectfully requests that the Court remove this action, pending in the Franklin County Court of Common Pleas, to the United States District Court for the Middle District of Pennsylvania.

Dated: November 16, 2022        Respectfully submitted,

*/s/ Benjamin D. Wanger*
Benjamin D. Wanger (Pa. Bar No. 209317)
BAKER & HOSTETLER LLP
2929 Arch Street Cira Centre | 12th Floor
Philadelphia, PA 19104-2891
Telephone:    215.564.1601
bwanger@bakerlaw.com

Casie D. Collignon (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone:  303.861.0600
ccollignon@bakerlaw.com

Carrie Dettmer Slye (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
312 Walnut Street

Suite 3200
Cincinnati, Ohio 45202-4074
Telephone:  513.929.3400
cdettmerslye@bakerlaw.com

*Attorneys for Defendant Keystone Rural Health Center*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 16, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Benjamin D. Wanger*
Benjamin D. Wanger
